UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| In re:<br><br>FREDERICK LAMAR LOCKWOOD,<br><br>    Debtor. | Chapter 7<br>Case No. 19-20307 |
|---|---|
| PATRICK KELLEHER, JR.,<br><br>    Plaintiff,<br><br>v.<br><br>FREDERICK LAMAR LOCKWOOD,<br><br>    Defendant. | Adv. Proc. No. 19-02015 |

**MEMORANDUM AND DECISION ON PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

This matter came before the Court on a motion filed by the plaintiff, Patrick Kelleher, Jr. (the "Plaintiff"), seeking summary judgment excepting his claim in the amount of $757,652.88 from discharge under 11 U.S.C. § 523(a)(6).[1] The Plaintiff's request for relief at this summary stage is premised on the allegedly preclusive effect of a state court judgment entered against the debtor-defendant, Frederick Lamar Lockwood (the "Defendant"), following his default in pre-petition litigation awarding the Plaintiff $249,936.88 in compensatory damages and $500,000.00 in punitive damages. The Defendant asserts that he is not collaterally estopped from defending against the Plaintiff's nondischargeability claim because the relevant issues were not actually litigated in the state court proceeding and the default judgment does not contain the willfulness

---

[1] References to statutory section numbers are to the Bankruptcy Reform Act of 1978, as amended, at 11 U.S.C. § 101 *et seq.* (the "Code").

finding requisite for a § 523(a)(6) determination.  For the reasons set forth below, the Court disagrees and will enter judgment in favor of the Plaintiff.

## I.     The Summary Judgment Record.

In the context of this summary judgment motion—where the Court is asked to determine whether the doctrine of collateral estoppel precludes the Defendant from defending against the Plaintiff's § 523(a)(6) claim—the material facts are not in dispute.  In 2015, the Plaintiff's rental property located at 92 Howe Street, Lewiston, Maine (the "Property") incurred substantial structural damage to the chimney for which the Plaintiff received an insurance settlement.  Pl.'s Stmt. Material Facts, Docket Entry ("D.E.") 12 ("PSMF"), ¶¶ 3-5.  For several reasons, the Plaintiff determined that, instead of fixing the damage, it was in his best interest to either sell the Property or, at least, "unload" the responsibility of maintaining it.  Id.

Around the same time, he met the Defendant who, as the sole member of Investment Properties, LLC, represented to the Plaintiff that he knew the Lewiston rental market and had a crew capable of repairing the chimney.  PSMF, ¶ 6.  The Defendant stated, in writing, through text messages and verbally, that if the Plaintiff gave him the insurance proceeds, permitted him to rent out the Property's two units and allowed him to collect the rents, he would repair the chimney, pay all of the Property's utilities, and pay the mortgage on the Property.  Id.  The Defendant further promised to direct his attorney to draft a bond for deed agreement by which the parties would formalize a transfer of the Property.  Id.  The Defendant agreed to pay the closing costs and attorney fees arising from the transaction.  Id.  The Plaintiff provided the Defendant the entirety of the insurance settlement for repairs to the roof and permitted the Defendant to rent out both units, which the Defendant and Investment Properties, LLC did from February of 2016 to early 2017.  PMSF, ¶ 7.

The parties agree that the business relationship later deteriorated but they differ in their recollection and interpretation of the events giving rise to the Plaintiff's claim.[2] The default judgment at issue here adopts the Plaintiff's account of the parties' dealings and, therefore, if this Court determines that the Defendant is collaterally estopped from challenging those findings, the Plaintiff's account must be accepted as true and these material facts are not genuinely disputed. If, however, the Court determines the judgment is not entitled to preclusive effect, summary judgment must fail because the material facts are in genuine dispute.

It is uncontested, however, that, on October 11, 2016, the Plaintiff commenced litigation against the Defendant and Investment Properties, LLC in Androscoggin Superior Court (the "State Court") seeking recovery on seven causes of action including claims of fraudulent/negligent misrepresentation, intentional infliction of emotional distress and punitive damages.  Aff. of Adam R. Lee, D.E. 11-2, Exh. 6.  Attorney Verne Paradie filed an answer and counterclaim on behalf of the Defendant.  Second Aff. of Adam R. Lee, D.E. 21, Exh. 2.  At some point during discovery, Attorney Paradie withdrew from representation.  Second Aff. of Adam R. Lee, ¶ 6.

Default entered against the Defendant and Investment Properties, LLC on May 31, 2017. Aff. of Adam R. Lee, Exh. 1 (the "Judgment").  On November 8, 2017—following a damages hearing for which the Defendant did not appear—the State Court entered the Judgment awarding

---

[2] The Plaintiff asserts that despite his assurances to do so, the Defendant did not transfer the Property's utilities to his name, make the mortgage payments on the Property, or direct his attorney to prepare a bond for deed agreement and that, through these actions, the Defendant maliciously damaged the Plaintiff's credit and caused the foreclosure of the Property.  PSMF, ¶¶ 8-13, 15.  The Plaintiff further alleges that the Defendant fraudulently claimed to be preparing the Property to be leased as "Section 8 housing."  PMSF, ¶12.  The Defendant, meanwhile, avers that, while he was hired to perform chimney repairs and agreed to collect rents, the parties never entered into a written contract with respect to the Property and that he decided not to move forward with purchasing the Property after learning of an asbestos issue.  Debtor's Stmt. Material Facts, D.E. 7 ("DSMF"), ¶¶ 3-4, 6-7.  The Defendant further argues that his failure to pay the utilities and property expenses is attributable to his difficulty in collecting rent rather than a willful or malicious intent to injure the Plaintiff.  DSMF, ¶¶ 4-5.

3

the Plaintiff $249,936.88 in compensatory damages and $500,000.00 in punitive damages for a total award of $749,936.88. Id.  The Judgment stated, in relevant part:

> Ultimately, Defendant Lockwood's actions caused the building to be foreclosed. Subsequent to the foreclosure, the building was sold, and at the sale price, the deficiency owed by Plaintiff was and is One Hundred Forty-Five Thousand One Hundred Seventeen Dollars and Eighty-Eight Cents ($145,117.88).  The purchase price was substantially reduced as a result of Defendant Lockwood's actions.  On numerous occasions, Defendant Lockwood indicated that he would be preparing the building for Section 8 and that the leases would be provided pursuant to Section 8.  Those leases were fraudulent, as were Defendant Lockwood's representations about what he would be doing with the building.  Additionally, as a result of Defendant Lockwood's actions, Mr. Kelleher's credit was substantially impaired. It was Plaintiff's intention to move away from his present residence to find a better school system for his daughters, however, the damage to his credit precludes him from obtaining a mortgage to purchase such home.  The Court further finds the Defendants' actions were based in part on Plaintiff's financial and emotional vulnerability as a result of his daughter's health issues, and that Defendants' actions were with malice and so outrageous that malice can be implied and that as a result, Plaintiff is entitled to punitive damages.  As a result of their default and the findings above, Defendants' counterclaim is dismissed.
>
> At the damages hearing, Plaintiff testified and submitted Exhibits A-D, which the Court admitted.  Defendants were not present.  The Court finds for the Plaintiff with respect to Counts I, II, III, IV, V, VI, VII, and VIII, and finds that the Defendants are jointly and severally liable for the full amount of Plaintiff's damages.

Id., pp. 4-5.

The Defendant commenced a chapter 7 bankruptcy case on June 18, 2019 and the Plaintiff filed this adversary proceeding on December 16, 2020.[3]  Complaint, D.E. 1.  The

---

[3] September 16, 2019 was the initial deadline by which to file a complaint against discharge or dischargeability. Case No. 19-20307, D.E. 4.  The Court later extended the deadline to November 15, 2019.  Case No. 19-20307, D.E. 24.  The day before that deadline expired, the Plaintiff filed a motion seeking a second extension of the deadline. Case No. 19-20307, D.E. 32.  In preparing this decision, the Court discovered that it never acted upon the second motion.  The motion and the proposed order were filed as a single electronic file in contravention of paragraph II(G) of the Administrative Procedures for Filing, Signing, Maintaining, and Verifying Pleadings and Other Documents in the Electronic Case Filing (ECF) System, as made applicable by the Standing Order Regarding Administrative Procedures for Electronically Filed Cases, dated August 12, 2002.  Consistent with its internal procedures, the clerk's office made a public entry on the docket on November 15, 2019 stating, "Proposed Form of Order is not an individual PDF."  While the entry is consistent with clerk's office procedures, the Court is aware that this procedure was not uniformly enforced in this case.  In fact, the Court granted the Plaintiff's first motion seeking an extension even though counsel filed the motion in the same manner. Case No. 19-20307, D.E. 32, 34. The Plaintiff timely filed the second motion under Fed. R. Bankr. P. 4004(b) which requires that the motion be filed prior to the expiration of

4

adversary complaint is just five paragraphs in length asserting that the findings of willfulness and malice purportedly contained in the Judgment—attached thereto as Exhibit A—compel exception from discharge under § 523(a)(6). Id. In his answer, filed on January 28, 2020, the Defendant admits that the State Court entered the Judgment but denies that he is collaterally estopped from litigating the facts underlying the § 523(a)(6) claim at issue here. Answer, D.E. 4. On May 29, 2020, the Plaintiff timely sought summary judgment on the grounds that the Defendant is collaterally estopped from challenging the findings in the Judgment and, therefore, the Plaintiff is entitled to judgment as a matter of law. Pl's Mot. Summ. J., D.E. 11. The Defendant objected on June 19, 2020, arguing that the factual issues were not actually litigated in State Court and, further, that the Judgment does not contain a finding of willfulness necessary to support a § 523(a)(6) claim. Debtor's Resp. Creditor's Mot. Summ. J., D.E. 16.

The Court held a hearing on August 11, 2020 during which the parties presented oral argument. Due to COVID-19, the Court conducted the hearing telephonically. Following the hearing, the Court took the matter under advisement.

## II.     Summary Judgment Standard.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material*

---

the existing objection deadline. The Defendant did not object to the extension when the Plaintiff filed the motion, raise the untimeliness of the complaint as an affirmative defense or otherwise draw the Court's attention to the Plaintiff's failure to obtain a second extension. The Court, therefore, finds that the Defendant forfeited any such defense and will consider the complaint as timely filed. Kontrick v. Ryan, 540 U.S. 443, 444-45 (2004) (Fed. R. Bankr. P. 4004 is not jurisdictional and ". . . even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point").

[4] The entirety of Fed. R. Civ. P. 56 is made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986) (emphasis in original). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero–Cerezo v. U.S. Dep't. of Just., 355 F.3d 6, 19 (1st Cir. 2004) (citing Anderson, 477 U.S. at 248-250). "Once the moving party has asserted that no genuine issue of material fact exists, the burden is on the opposing party to point to specific facts demonstrating that there is, indeed, a trialworthy issue." Calero-Cerezo, 255 F.3d at 19 (citing, Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)). The record must be construed in a light most favorable to the nonmoving party and all reasonable inferences must be drawn in that party's favor. Rosenberg v. City of Everett, 328 F.3d 12, 17 (1st Cir. 2003).

### III.    Analysis.

This motion turns on the preclusive effect of the Judgment. The decision whether to apply the doctrine of collateral estoppel to a default judgment is a discretionary one. Backlund v. Stanley-Snow (In re Stanley-Snow), 405 B.R. 11, 19 (B.A.P. 1st Cir. 2009) (citing, Int'l Strategies Grp., Ltd. v. Pomeroy (In re Pomeroy), 353 B.R. 371, 376 (Bankr. D. Mass. 2006)). And, the Court must look to Maine state law to determine whether the Judgment should be given preclusive effect. McCrory v. Spigel (In re Spigel), 260 F.3d 27, 33 (1st Cir. 2001) ("[w]e look to state law to determine the preclusive effect of a prior state court judgment"); Backlund, 405 B.R. at 18 ("[i]n determining whether a party should be estopped from relitigating an issue decided in a prior state court action, the bankruptcy court must look to that state's law of collateral estoppel"). See also, McAlister v. Slosberg (In re Slosberg), 225 B.R. 9, 14 (Bankr. D. Me. 1998).

6

The doctrine of collateral estoppel is properly applied under Maine law where "the identical issue necessarily was determined by a prior final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in the prior proceeding." State Mut. Ins. Co. v. Bragg, 589 A.2d 35, 37 (Me. 1991) (*citing*, Hossler v. Barry, 403 A.2d 762, 767 (Me. 1979). *See also*, Reynolds-Marshall v. Hallum (In re Reynolds-Marshall), 162 B.R. 51,55 (D. Me. 1993) ("[u]nder Maine law, collateral estoppel applies when (1) an issue of fact or law is actually litigated; (2) determined by a valid and final judgment; (3) the determination is essential to the judgment; and (4) the determination is conclusive in a subsequent action between the parties") (*citing*, Morton v. Schneider, 612 A.2d 1285, 1286 (Me. 1992)).

The parties agree that the Judgment is valid and final, but the Defendant argues that the issues were not actually litigated in State Court and, further, that the Judgment does not contain the findings necessary to a determination under § 523(a)(6).

    A.   *The factual issues were actually litigated in State Court.*

The Defendant contends that the Court should not give the Judgment preclusive effect because it entered following the Defendant's default and the findings were made as the result of a damages hearing held in his absence after he abandoned his defense in State Court. Therefore, the Defendant argues, the factual issues decided by the State Court were not actually litigated.

While the Defendant is correct that courts are generally reluctant to give preclusive effect to a true default judgment, many recognize an exception when the opposing party substantially participates in the litigation prior to the entry of default. Backlund, 405 B.R. at 19-20 ("most federal courts have . . . ruled that the 'actual litigation' requirement of collateral estoppel may be satisfied if the party actively or substantially participated in the proceedings prior to the entry of a default judgment") (*citing* Pomeroy, 353 B.R at 377 (collecting cases)); Royal Bus. Grp., Inc.

7

v. Preti, Flaherty, Beliveau & Pachios, 1996 WL 400459 at *1 (D. Me. July 3, 1996) (acknowledging that some courts have chosen to apply the doctrine of collateral estoppel to default judgments "where an appearance was entered and extensive litigation occurred, but the party ultimately defaulted"). *See also*, Gray v. Tacason (In re Tacason), 537 B.R. 41, 52 (B.A.P. 1st Cir. 2015). "These courts have reasoned that if a party was afforded a reasonable opportunity to defend in the prior action but chose not to do so, the party could have reasonably foreseen the consequences of not defending the action and it would be 'undeserved' to give a 'second bite at the apple when he knowingly chose not to defend himself in the first instance.'" Backlund, 405 B.R. at 20 (*quoting*, Jones v. Wilson (In re Wilson), 72 F.3d 959 (Bankr. M.D. Fla. 1987)).

Unfortunately, no bright line rule exists to determine whether a debtor's involvement in a case satisfies the "substantial participation" exception to the "actually litigated" requirement. The level of participation must be placed somewhere on the spectrum between a true default resulting from a party's failure to appear and a judgment on the merits following completion of an evidentiary hearing. This Court recently declined to apply the collateral estoppel doctrine to a default judgment entered in Arizona against debtors who were then residing in Maine and lacked the financial means to do anything more than file a basic answer. Rodriguez Remodeling, LLC v. Moradi (In re Moradi), 2019 WL 3049721, n. 5 (Bankr. D. Me. July 11, 2019). On the other hand, courts are more than willing to recognize the substantial participation exception where a defendant participates in discovery and summary motion practice. *See*, *e.g.* Backlund, 405 B.R. at 20 (debtor substantially participated where, over the course of two years, she filed an answer to the complaint, participated in written discovery, gave a deposition and filed papers with the court before failing to appear for trial); McCurdie v, Strozewski (In re Strozewski), 458 B.R. 397, 404-05 (Bankr. W.D. Mich. 2011) (holding that debtor more than sufficiently participated to

satisfy the "actually litigated" requirement where the debtor retained a lawyer, answered the complaint, participated in discovery and mediation and filed two unsuccessful motions for summary disposition before counsel withdrew and the debtor abandoned his defense in state court, resulting in a default judgment).

While the facts of this case do not exactly match those of either of these examples, they more closely resemble the large degree of participation described in McCurdie. In addition to answering the complaint, the Defendant also filed a counterclaim and then commenced the discovery stage of the case before his counsel withdrew. The relative length of time the Defendant participated in the litigation, coupled with the passage of time between the entry of the Judgment on November 8, 2017 and the commencement of the Defendant's bankruptcy case on June 18, 2019, leads this Court to believe that, unlike the debtors in Rodriguez Remodeling, the Defendant "was afforded a reasonable opportunity to defend in the prior action but chose not to do so." Backlund, 405 B.R. at 20.

While the Rodriguez Remodeling debtors credibly explained that financial and geographic limitations precluded them from sustaining a defense in the Arizona litigation, the Defendant provides no reasonable explanation for his default. Instead, he maintains that he never received notice of the State Court action and that his prior counsel answered the State Court complaint without his knowledge and without ever having been retained in connection with that dispute. Affidavit, D.E. 16-1, ¶¶ 7-11. He claims to have never received notice of the motion for default, the entry of default or the default judgment. Id. The Court is not convinced. Generally, attorneys do not actively engage in litigation without the knowledge of their clients. To do so runs counter to both attorneys' own economic interests and, more importantly, the attorneys' duties and obligations to their clients. See, Maine Rules of Prof'l Conduct R. 1.2(a)

9

and 1.4. The Defendant's assertions are further undermined by documentation establishing that both the Plaintiff's counsel and Attorney Paradie copied the Defendant on multiple communications and further, that Attorney Paradie represented to Plaintiff's counsel that he had been in communication with the Defendant.[5] Even if the Court accepts the Defendant's account as true, however, the efficacy of the judicial system depends, at least in part, on the ability of courts and interested parties to rely upon counsel as representatives for their purported clients. If parties were permitted to escape unfavorable orders or judgments based on perfunctory claims of attorney miscommunication, one can imagine that it would be difficult to achieve finality in any legal matter.[6]

The totality of these circumstances pushes this case to the Backlund and McCurdie end of the spectrum. The Court is convinced that the Defendant's actions here—in attempting to nullify the consequences of his decision not to defend himself in State Court—is just the type of case for which the "substantial participation" exception to the "actually litigated" rule was developed

---

[5] The record includes, *inter alia*: (a) a letter Plaintiff's counsel sent directly to the Defendant on or about August 18, 2016, making a settlement demand, attaching a draft of the State Court complaint, and stating that, if the demand was not honored, the complaint would be filed within the next thirty days; (b) a cover letter from Attorney Paradie, addressed to the Clerk of the State Court, copying the Defendant and attaching an acknowledgement and acceptance of service of complaint on behalf of the Defendant, as well as an answer and counterclaim; (c) e-mail correspondence between Plaintiff's counsel and Attorney Paradie on March 20, 2017 in which Attorney Paradie stated that he was "not getting much cooperation or response" on discovery requests; and (d) a cover letter addressed to the Clerk of the State Court, copying the Defendant and attaching a draft of the Judgment. Second Aff. Adam R. Lee, Exhs. 1, 2, 4 and 5.

[6] To the extent the Defendant asserts the question of whether he received notice of the State Court litigation constitutes a genuine issue of material fact mandating denial of summary judgment, the Court disagrees. First, the Debtor's assertion is not material to the merits of the Plaintiff's underlying § 523(a)(6) exception. Its only relevance is to the applicability of the collateral estoppel doctrine and, as such, is not given the same deference afforded a nonmoving party on a material issue of fact. The question of whether the Defendant had notice of the State Court litigation may be determinative of the outcome of this summary judgment motion premised on the preclusive effect of the Judgment but it would not be determinative of a claim under § 523(a)(6) should this case proceed to an evidentiary trial. However, even if the Court were to consider the resolution of this issue "material," it cannot be said that the dispute is genuine. In light of the evidence offered by the Plaintiff establishing Attorney Paradie's agency and the service of process upon the Defendant, this Court concludes that no reasonable fact finder would find merit in the Defendant's naked assertion that he had no knowledge of the State Court litigation. Anderson, 472 U.S. at 247-48; Calero-Cerezo, 355 F.3d at 19.

and, therefore, this requirement of the collateral estoppel doctrine is satisfied. See, Automated Salvage Transport Co., LLC v. Swirsky (In re Swirsky), 372 B.R. 551, 563 (Bankr. D. Conn. 2006) (rejecting the debtor's argument that collateral estoppel was inapplicable because the acts or omissions of the debtor's state court counsel denied him the opportunity to fully and fairly litigate).

> B. *The Judgment includes all of the findings necessary for a determination under § 523(a)(6).*

Turning now to the second part of this Court's analysis: does the Judgment include all of the findings necessary to exempt the Plaintiff's claim from discharge? A discharge under § 727 does not discharge an individual from any debt "for willful and malicious injury." § 523(a)(6). A determination of nondischargeability under this provision requires findings of both "willfulness" and "malice." At one time, courts held that a debtor acted willfully if he or she acted deliberately and with intention. *See, e.g.*, Reynolds-Marshall, 162 B.R. at 55. That standard changed in 1998, however, when the Supreme Court held that willfulness requires an intent to injure; not merely an intent to act. Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998).

> The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury.' Or, Congress might have selected an additional word or words, *i.e.*, 'reckless' or 'negligent,' to modify 'injury.' Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'

Id. (*quoting*, Restatement (Second) of Torts § 8A cmt. *a* (1964)).

In the Judgment, the State Court expressly found that the Defendant acted with malice but did not use the word "willful." The Defendant contends that the omission of the word means the State Court never made any findings with respect to this critical element of § 523(a)(6).

11

Some courts, however, have been willing to infer a finding of willfulness in the absence of an express finding in the prior judgment:

> Although the state court did not expressly find that Ms. Tacason intended to injure Mr. Gray, the court's findings establish that injury to Mr. Gray was substantially likely to occur and, in fact, by not complying with the court's orders, Ms. Tacason deprived Mr. Gray of the property the court was attempting to divide between them. Ms. Tacason's intent to interfere with and deprive Mr. Gray of his right to the jerseys and other memorabilia was manifestly clear from the state court's findings. Thus, the state court's findings satisfy the willfulness requirement of § 523(a)(6).

Gray, 537 B.R. at 53-54. *See also*, O'Rorke v. Porcaro (In re Porcaro), 545 B.R. 384, 400 (B.A.P. 1st Cir. 2016) (inferring finding of willfulness where "[t]he trial judge's unambiguous and factually supported findings in the [s]tate [c]ourt [d]ecision leave little question that Porcaro's actions were 'intentionally done'"); McCurdie, 458 B.R. at 403 (". . . debts arising out of misconduct such as intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel and deliberate vandalism of a creditor's premises have been held to satisfy the willful and malicious injury standard under §523(a)(6)"); T.K. v. Love (In re Love), 347 B.R. 362 (Bankr. W.D. Mo. 2006) (inferring finding of willfulness for § 523(a)(6) purposes from conviction for molestation); Reynolds-Marshall, 162 B.R. at 56 (inferring willfulness pre- Kawaauhau from a referee's finding "by a *preponderance of the evidence* that Reynolds converted the partnership assets by burning deeds conveying properties to Hallum and recording, in violation of her agreement with Hallum, deeds conveying partnership properties to her").

The State Court found that the Defendant took advantage of the Plaintiff's financial and emotional vulnerability and entered judgment on all eight causes of action asserted by the Plaintiff, including his claim for intentional infliction of emotional distress. Under Maine law, "A plaintiff asserting an intentional infliction of emotional distress claim must show that: (1) the

12

defendant intentionally or recklessly inflicted severe emotional distress or was certain that such distress would result from the defendant's conduct; (2) the conduct was so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community;' (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so 'severe' that 'no reasonable [person] could be expected to endure it.' Vogt v. Churchill, 679 A.2d 522, 524 (Me. 1996) (*quoting*, Henriksen v. Cameron, 622 A.2d 1135, 1139 (Me.1993)).

To the extent that the first element in Maine's formulation of the tort intentional infliction of emotional distress includes an *intentional* infliction of severe emotional distress, the Court interprets that intent to inflict harm as the same intent the Supreme Court described in Kawaauhau. Admittedly, under this formulation, one could also be found liable for intentional infliction of emotional distress after *recklessly* inflicting severe emotional distress; a level of intent the Supreme Court rejected in Kawaauhau as insufficient to satisfy the §523(a)(6) standard. This Court is convinced, however, that the State Court's express findings that the Defendant took advantage of the Plaintiff's financial and emotional vulnerability, and that the Section 8 leases were fraudulent, as were the Defendant's representations about those leases, support a determination that, in entering judgment on the intentional infliction of emotional distress count, the State Court necessarily found that the Defendant willfully injured the Plaintiff. The Judgment therefore contains all the elements necessary for a § 523(a)(6) determination.

## IV.    Conclusion.

Having determined that the Defendant's actions in the State Court litigation are sufficient to satisfy the "substantial participation" exception and that the Judgment includes a finding of willfulness, the Court finds that the collateral estoppel doctrine precludes the Defendant from

relitigating the issues of willfulness and malice before this Court. The record is therefore devoid of any genuine issues of material fact and the debt arising from the Judgment is, as a matter of law, excepted from the Defendant's discharge pursuant to §523(a)(6).

A separate judgment will enter.